## Gray-Mellon Oil Company v. Fairchild.

(Decided March 22, 1927.)

### Appeal from Johnson Circuit Court.

1. Appeal and Error.—In action to quiet title, plaintiff cannot contend, for first time on appeal, that defendant did not show full title to whole of interest of those under whom it claimed, because it held under deeds, made by devisees, under wills probated in other states or countries.

2. Quieting Title.—In action to quiet title, plaintiff must recover, if at all, on strength of his own title and not on weakness of defendant's.

3. Deeds.—Words of inheritance, which were necessary in deed at common law to create fee, are not necessary, under Ky. Stats., section 2342.

4. Estoppel.—By "special warranty" in deed granting exclusive privilege of making, mining, and getting oil on or from land, grantors covenant that they will warrant property to grantees, heirs and assigns against claim of grantors and all persons claiming through or under them, in view of Ky. Stats., section 493, and one claiming under grantor is estopped to deny rights of grantees.

5. Mines and Minerals.—Deed granting exclusive privilege of making, mining, and getting oil on or from land held to convey interest in land.

6. Mines and Minerals.—Owner of land in fee owns to center of earth, but does not own any specific water, oil, or. gas under earth until he reduces it to possession.

7. Mines and Minerals.—Consideration. of $1.00 held sufficient to sustain deed granting exclusive privilege of making, mining, and getting oil on or from grantor's land.

8. Mines and Minerals.—Grant of exclusive privilege of making, mining, and getting oil on or from land, being unlimited, is not affected by nonuser unless there is adverse possession for statutory period, and possession of surface is not adverse.

KIRK, KIRK & WELLS and GARNETT & VAN WINKLE for appellant.

FRED HOWES for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Reversing.

On April 2, 1859, Joseph Williams and wife executed to William E. Mellon and Algernon S. Gray an instrument which, so far as material here, is in these words:

"This indenture made this 2nd day of April, 1859, between Joseph Williams and his wife, Elizabeth Williams . . . of the one part, being all of Johnson county, Kentucky, and William P. Mellon, of the county of Lawrence, Kentucky, and Algernon S. Gray of Packingham county, Virginia, of the second part.

"Witnesseth: That in consideration of the sum of one dollar in hand paid, the receipt of which is hereby acknowledged, the parties of the first part have granted and sold to the said parties of the second part, exclusive privilege of making, mining and getting oil on. or from the lands which they severally own, and such rights of way as may be necessary for the purpose, to-wit: the said Joseph and Elizabeth Williams on their part of land which

lies on Paint creek in said county of Johnson and lies west of Stephens Pelphery's land, the tract containing about 480 acres  . . .  and the said parties of the first part convey to the said parties of the second part the said exclusive privilege and the said right of way with special warranty.

"In witness of all of which they have hereunto set their proper signatures the day and year above written,  . . .

"(Signed) JOSEPH WILLIAMS,
"ELIZABETH WILLIAMS . . . "

The instrument was properly acknowledged and recorded.  On December 6, 1920, A. M. Fairchild brought this action against the Gray-Mellon Oil Company, alleging that he was the owner of a tract of 140 acres of land and that he and those under whom he claimed had been in the adverse possession of the land for more than fifty years, holding it as their own; that the Gray-Mellon Oil Company was setting up a spurious claim to the oil and oil privileges in the land under the above writing; that the only right conveyed thereby was the personal privilege authorizing Algernon S. Gray and William P. Mellon to mine and get oil from the land; that this right or privilege was never exercised by either of them and was totally abandoned by them more than sixty years ago, and none of their heirs ever attempted to convey their rights until about the year 1920, at which time a number of persons claiming to be their heirs executed some kind of instrument of right conveying to the defendant their rights.  He also alleged Gray and Mellon had never performed the consideration for which the grant was made; that the claim of the defendant was a cloud upon his title; that recently there has been great activity in the production of oil and gas and in leasing property for this purpose in the vicinity, and that he could lease his lands for a substantial royalty but for the wrongful claim of the defendant.  He prayed that his title be quieted and that the defendant be perpetually enjoined from asserting any interest or right to any portion of the land.  The defendant answered denying the allegations of the petition and asserting its right under the instrument above quoted.  Proof was taken and on final hearing the circuit court adjudged the plaintiff the relief sought.  The defendant appeals.

Both parties claim under Williams. The conveyance by Williams, under which Fairchild claims, was made after the instrument above quoted was executed and recorded. It is insisted for the plaintiff that the Gray-Mellon Oil Company does not show a full title to the whole of the interest of Gray and Mellon under the instrument above quoted, for the reason that the defendant holds under deeds made by certain devisees under wills probated in other states or countries, which do not appear to have been probated in Kentucky; but no objection to the evidence was filed in the circuit court and this objection cannot be made for the first time in this court. If the objection had been made in the circuit court the trouble might have been removed by filing an additional certificate. This objection only goes to a part of the deeds. The Gray-Mellon Oil Company admittedly owns some interests, and owning an interest it has the right to defend this action to protect that interest. A. M. Fairchild in no way connects himself with Gray and Mellon. He does not own any interest which they owned. He is the plaintiff in the action and he must recover, if at all, on the strength of his own title and not on the weakness of the defendant's title.

This brings us to the question of the effect of the instrument. At common law words of inheritance were necessary in a deed to create a fee. But section 2342, Ky. Stats., provides:

"Unless a different purpose appear by express words or necessary inference, every estate in land created by deed or will, without words of inheritance, shall be deemed a fee simple or such other estate as the grantor or testator had power to dispose of."

Under this statute "words of inheritance" are not necessary to the creation of a fee. Beinlein v. Johns, 102 Ky. 570. It will be observed that by the deed Joseph and Elizabeth Williams grant the parties of the second part the exclusive privilege of making, mining and getting oil on or from the land, and also they convey to them the said exclusive privilege with special warranty. Section 493, Kentucky Statutes, provides:

"A covenant by a grantor, 'that he will warrant specially the property thereby conveyed,' or words of like import, or the words 'with special warranty,' in any deed, shall have the same effect as if the gran-

tor had covenanted that he, his heirs and personal representatives, would forever warrant and defend the said property unto the grantee, his heirs, personal representatives and assigns, against the claims and demands of the grantor and all persons claiming, or to claim by, through, or under him.''

It therefore follows that by this deed Williams and wife covenant that they will warrant the property unto the grantees and their heirs and assigns against the claims and demands of the grantors and all persons claiming through or under them. This warranty binds Fairchild no less than Williams, as he claims under Williams, and he is estopped to deny the rights of the grantees in the deed to what was thereby conveyed.

The question therefore presented is, what is conveyed by the deed? We cannot see that there is any substantial distinction between this instrument and the one before the court in Scott v. Laws, 185 Ky. 440. That deed also was made in 1859. It conveyed ''all the mineral rights and coal privileges.'' It was contended there as here that the rights had been lost by nonuser and abandonment and that in any event this should be the case as to oil and gas, but the court said:

''Since there has been no severance of the mineral estate from the surface estate, the owner of the minerals did not lose his right or his possession by any length of nonuser, nor did the owner of the surface acquire title by the statute of limitations to the minerals by his exclusive and continued occupancy and enjoyment of the surface merely.

''But the further contention is made that oil and gas did not pass by the conveyance in question. Here the grantors conveyed 'all mineral right and coal privileges and rights-of-way to and from said minerals and coal privileges; also the right to search for all undiscovered minerals and coals upon the lands hereinafter described.'

''Since oil and gas are minerals, and there is nothing in the language of the deed in question which shows that the parties contemplated something less general than all substances legally cognizable as minerals, we conclude that the title to the oil and gas necessarily passed by the conveyance.'' Scott v. Laws, 185 Ky. 443, 444.

This is the well settled rule in this state.

"We therefore conclude that the form of contract is immaterial, and that it makes no difference whether the oil or gas privileges be conveyed by deed or lease, just so the effect of the instrument is to vest in the lessee all property rights to the oil or gas that may be found in paying quantities on the leased premises." Wolfe Co. v. Beckett, 127 Ky. 258.

"It is well settled that oil and gas are minerals and are a part of the realty, and a lease giving to the lessee the right to explore certain lands and remove therefrom the oil and gas in a contract for the transfer and sale of an interest in lands and is required to be in writing." Beckett-Iseman Oil Co. v. Backer, 165 Ky. 819.

To the same effect see Kash v. United Star Oil Co., 192 Ky. 422; Hoskins v. Northern, &c., Oil Co., 194 Ky. 628; Lowther v. Scheirich, 195 Ky. 177.

"The parties to this contract were competent to contract. The consideration paid the grantors was substantial. They conveyed the absolute title to seven-eights of the oil and all the minerals, and also conveyed the gas with the understanding that they should be paid $100.00 'for each gas well when used off of said premises.' They gave the grantee unlimited time for exercising its rights to remove these products. That having been done, lapse of time cannot convert the grantee's fee into a leasehold right, nor operate to defeat its title." Adams v. Elkhorn Coal Corp., 199 Ky. 615.

"Consistent with the above principles we have also held that oil and gas leases are to be considered real property." Union Gas & Oil Co. v. Weideman Oil Co., 211 Ky. 361. To the same effect see Lovelace v. Southwestern Petroleum Co., 267 Fed. 504, 513.

In a note to 29 A. L. R. 586, on a review of all the cases, the majority rule is thus stated:

"Notwithstanding the vagrant character of oil and gas, and their liability to escape, the right of the owner of the fee to land which has oil and gas beneath the surface to sever the estate in the sur-

face from that in the oil or gas underlying it is generally recognized."

Oil and gas in the earth stand much as water percolating under the earth. The owner in fee owns to the center of the earth. But he does not own a specific cubic foot of water, oil or gas under the earth until he reduces it to possession. The reason is, these substances are fugitive and the water, oil or gas which is under his land today may be elsewhere tomorrow. He is only entitled to hold as his own the water, oil or gas which he finds under his land and reduces to possession. But the right to explore for these substances, and to reduce them to possession if found, is a valuable part of his property. It is an interest in the land springing out of his ownership of everything above and below the surface. While the oil is fugitive the oil sand-bearing is as stationary as a bank of coal. The only practical use to which the oil bearing sand can be put is to get the oil out of it. The exclusive, permanent right to get the oil from the sand is necessarily a right to a part of the land; for to use the sand in any other way would be to destroy the right to extract the oil from it, as the sand must be allowed to remain as it is for the oil to flow through it. If Williams had conveyed his land to another, reserving to himself "the exclusive privileges of making, mining and getting oil on the land," then plainly he would have reserved to himself an interest in the land and have severed this interest in the grant of the surface. Bodcaw Lumber Co. v. Goode, 29 A. L. R. 578. There can be no substantial distinction between the granting of the exclusive privilege of making, mining and getting oil and a reservation of the same right. In either case there is a severance of the oil right from the estate in the surface.

The conflict in the cases on the subject is more apparent than real. The rule as above stated has been so often declared by this court that it has become a rule of property in this state. If it is deemed unwise the legislature may change it. The change, if so made, will only apply to grants thereafter made and no injustice will be done in past transactions. But if the rule is now changed by this court, business will be unsettled and persons who have invested large sums of money on the faith of the rule, as declared by the court, will suffer great losses.

The consideration of one dollar was sufficient to sustain the deed. Union, &c., Oil Co. v. Weideman Oil Co., 211 Ky. 361. The devise of the rents and profits of the land is a devise of the land. Mayes v. Karn, 115 Ky. 264. So the grant of all of the mineral rights and coal privileges is a grant of an interest in the land, including the oil and gas that may be found, as was held in Scott v. Laws, *supra.* The exclusive and unlimited right to mine the land for oil or gas is no less an interest in the land than the right to mine it for coal or copper, although the title to any specific oil or gas is not absolute until it is reduced to possession.

This conclusion in no wise conflicts with Commonwealth v. Trent, 117 Ky. 34; Louisville Gas Co. v. Ky. Heating Co., 117 Ky. 71, 132 Ky. 435. In those cases it was simply held that the owner could not wilfully waste the gas on his land to prevent his neighbor from rightfully using it; for in this way he was destroying not only the gas under his land but also the gas under his neighbor's land. In those cases the well-settled rules as to water under the surface were applied to gas under the surface. Our conservation statutes rest on the same ground and are in no wise affected by the rule above indicated. Every man must so use his own as not unduly to invade his neighbor's rights. The resources of nature are for the common benefit of mankind. While the owner of the surface owns upwards no less than downward, he may not on his own land befoul the pure air of his neighbor, but must exercise his rights with due regard for his neighbor's. The same rule applies to the owner mining in the earth for water or oil or gas. He does not own any part of them until found and reduced to possession, and he must conduct his search and taking possession with due regard to the rights of his neighbor; but his right to search the oil sands and take possession of the oil therein is an interest in the land, and this right he may sell and convey to another. The oil-bearing sands are a part of the land. The conveyance of the exclusive right to use these sands for the only purpose for which they can be used is necessarily a grant of an interest in the land.

Such a grant being unlimited is not affected by nonuser, unless there is an adverse possession and the right of action is barred by limitation. Asher v. Gibson, 198 Ky. 285. The possession of the surface was not adverse to the grantee, as there was no oil operation of any kind.

McPherson v. Thompson, 203 Ky. 35. Though the grantee takes no title to any oil until he reduces it to possession, he takes an interest in the land from the delivery of the deed; for the grant of a right to bore and maintain oil wells is necessarily a grant of a right to the use of the land so occupied by the wells. -

Judgment reversed and cause remanded for a judgment dismissing the petition. The whole court sitting.