## CENTRAL KENTUCKY NATURAL GAS CO. v. SMALLWOOD.

Court of Appeals of Kentucky.
Nov. 13, 1952.

Lewis A. White, Mt. Sterling, for appellant.

Redwine & Redwine, Winchester, for appellee.

DUNCAN, Justice.

This appeal presents for our determination the question of who is entitled as between the surface or mineral owner to the rentals accruing under a lease for the subterranean storage of gas.

On September 15, 1944, the heirs of J. H. Hardwick conveyed to appellee, E. C. Smallwood, approximately 500 acres of land in Powell County. By the terms of the deed the grantors reserved one-half of the minerals. On March 3, 1950, Smallwood and his wife executed an oil and gas production and storage lease covering their interest in the 500 acres to the appellant, Central Kentucky Natural Gas Company. The lease conferred on the lessee the right of drilling and operating for and marketing oil and gas, and of storing gas of any kind regardlesss of the source thereof, including the right of injecting gas in the oil and gas strata and removing the same therefrom. The consideration for the lease was 1/8th of all of the oil produced and saved from the leased premises and an annual rental of $100 for each gas well from which gas was produced and marketed or a minimum annual rental of $1 per acre. These rental and royalty payments were

qualified by the provision that if the lessor did not have title to all the oil and gas under the premises the payments were to be decreased proportionately.

No oil was produced and no gas was extracted from wells located on the leased premises. The only use to which the property was put by the lessee was the storing of gas which was removed through wells located on adjacent lands. In the payment of minimum rentals the Gas Company paid only one-half of the accrued rentals to Smallwood which represented his proportionate interest in the minerals.

Contending that gas storage rentals were payable to the surface rather than the mineral owner, appellee filed this declaratory judgment action against the Gas Company and the Hardwick heirs. The lower Court concluded that rentals under the lease were payable to the surface owner and entered judgment against the Company for the unpaid balance. The Gas Company appeals.

In view of the importance of the question involved we are not considering the procedural questions raised by appellant or the accuracy of the Chancellor's computation in his determination of the amount of the rentals due. Neither are we reconsidering appellee's motion to dismiss the appeal. This motion was overruled on February 29, 1952.

There exists in Menifee, Montgomery and Powell Counties a natural gas storage field known as the Menifee Gas Storage Field. Originally the field contained native natural gas which was exhausted for commercial purposes several years ago. Since that time appellant has been storing gas in the field by injecting gas piped from distant sources into the old native gas-bearing stratum known as the corniferous lime formation. The old production field underlays some 18,000 acres but increased rock pressure of the gas, due to large injections, has caused the field to expand and the Gas Company now has some 41,000 acres under lease in order to protect its stored gas. The land covered by the lease in this case lies on the extreme southern edge of the gas storage field.

This Court has had before it two cases in which the subterranean storage of gas in this field was noticed. In the case of Hammonds v. Central Kentucky Natural Gas Co., 255 Ky. 685, 75 S.W.2d 204, there was involved the question of ownership of the gas after its storage. The later case of Cornwell v. Central Kentucky Natural Gas Co., Ky., 249 S.W.2d 531, was one involving the acquisition of a gas storage lease by eminent domin under the provisions of a statute enacted by the General Assembly at its 1948 session. Neither of these cases involves the precise question here considered and it has not been directly decided elsewhere.

In the Hammonds case supra, the appellant owned a small tract of land located within the boundary used for gas storage which was not leased to the Gas Company. The geological basin or dome extended under the property of Hammonds and when the gas was forced into the ground it penetrated this cavity and was being withdrawn as the Company pumped its adjacent wells. In a suit for trespass, the landowner claimed that the gas was placed in and under the property without her knowledge or consent.

There the Court held that the Company ceased to be the exclusive owner of the gas after its injection into the ground, and not being the owner of the gas was not responsible for trespass on account of its storage beneath the property of the landowner. The ownership of the gas once being captured and then released by injection into the ground, was held to be analagous to wild animals or animals "ferae naturae". In this connection it was said:

"If one capture a fox in a forest and turn it loose in another, or if he catch a fish and put it back in the stream at another point, had he not done with that migratory, common property just what the appellee has done with the gas in this case? Did the company not lose its exclusive property in the gas when it restored the substance to its natural habitat?" [255 Ky. 685, 75 S.W.2d 206]

Under the analogy recognized in this case it is apparent that there is no distinction in the title to gas once recovered

and released for subterranean storage and native gas before its initial recovery.

■ Title to gas in place whether a severed or unsevered estate is a qualified one. Because of its fugitive characteristics, one does not own the gas in the sense that one owns the surface or the solid minerals. Such ownership is limited to the exclusive legal right to explore, and if gas should be found to reduce the same to possession and ownership. But the mineral owner has the right to exclude all others from attempting to exercise the right on his premises. Sellars v. Ohio Valley Trust Company, Ky., 248 S.W.2d 897.

■ Unless precluded by the terms of a lease, the mineral owner would have the exclusive right to explore for and produce gas released for storage as well as native gas. A gas storage lease relinquishes that right and confers it on the lessee. Mere ownership of the surface does not confer on the owner the right to explore for and produce native gas merely because it is located beneath the surface which he owns. There being no distinction as to ownership, he has no greater rights with respect to the gas released for underground storage. A lease from a mere surface owner confers no rights on the lessee in connection with the production of gas, native or stored, because he has no rights to confer.

In arriving at the conclusion which we reach, it is not necessary to determine whether the cavern or strata from which a mineral has been removed becomes the property of the mineral or surface owner. The rule in England is that in case of a grant of the minerals under land the grantee has the exclusive right of possession of the whole space occupied by the layer containing the minerals, and after the minerals are taken out, is entitled to the entire and exclusive use of that space for all purposes. Bowser v. Maclean, 17 Eng.Rul. Cas. 452; Batten Pooll v. Kennedy, 1 Ch. 256, 76 L.J.Ch.N.S. 162. The general rule in the United States seems to be otherwise. 36 Am.Jur., page 403–404, Sec. 181; Lillibridge v. Lackawanna Coal Co., 143 Pa. 293, 22 A. 1035, 13 L.R.A. 627; Robinson

v. Wheeling Steel & Iron Co., 99 W.Va. 435, 129 S.E. 311.

As we have heretofore indicated, there is a clear distinction between the ownership of solid minerals and those of a fugitive nature, such as oil, gas or water. Coal and other stationary minerals remain in one place until removed. After removal the cavern in which such minerals were originally located is generally of no benefit to the person originally owning the minerals. However, in the case of fugitive minerals, the mineral owner does not own a specific cubic foot of water, oil or gas under the earth until he reduces it to possession. The reason is, these substances may be under his land today and somewhere else tomorrow. His ownership involves merely the right to explore and reduce the minerals to possession. Therefore, the geological formations or strata common to this class of minerals may be exhausted a thousand times and the mineral owner still retain the exclusive right to take all the minerals which find their way into the formation, whether through injection or in any other way. This view is supported by Gray-McIlon Oil Company v. Fairchild, 219 Ky. 143, 292 S.W. 743, 745, in which it was said:

"While the oil is fugitive, the sand-bearing oil is as stationary as a bank of coal. The only practical use to which the oil-bearing sand can be put is to get the oil out of it. The exclusive, permanent right to get the oil from the sand is necessarily a right to a part of the land, for to use the sand in any other way would be to destroy the right to extract the oil from it, as the sand must be allowed to remain as it is for the oil to flow through it."

■ We conclude that the mineral rather than the surface owner is entitled to the rental or royalty accruing under a gas storage lease. The Gas Company properly paid to appellee only that portion of the rental which represented appellee's proportionate ownership of the minerals.

■■ Appellee insists that the surface of the land may be utilized under the lease in the production of the stored gas and that

such use amounts to a taking of the surface without compensation to the owner. Of course, the production of minerals involves some use of the surface, but the right to a reasonable and necessary use of the surface for exploration and production is always implied in a grant or reservation of minerals. Buck Creek R. Co. v. Haws, 253 Ky. 203, 69 S.W.2d 333.

For the reasons indicated herein the judgment is reversed with directions to enter a judgment in conformity with this opinion.