## Hail, &c. vs. Reed, &c.

APPEAL FROM CUMBERLAND CIRCUIT.

</div>

ORD. PET.

Case 51.

If the owner of land sink a well from which oil is taken, the oil thus taken is his property, and he may recover it, by action of detinue, or its value, in an action of trover, from one who takes it from the well.

The facts of the case are stated in the opinion of the court.—*Rep.*

*J. T. Golder*, for appellants—

It is respectfully insisted that the Circuit Court erred in instructing the jury that upon all the evidence they should find for the appellees; and in refusing a new trial.

The ground assumed for the instruction is that the appellees had, by their own labor, drawn the oil from the well and put it in barrels, and thereby acquired a property in it, and that the appellant never had any possession thereof.

It is conceded that the owner of a freehold acquires no property in the water of a running stream upon the surface of the earth, of which he is the owner,

until he reduces it into actual possession, by putting into barrels, pipes, cisterns, or in some other way confining it, so as to enable him to maintain an action for the specific thing. Still we apprehend this doctrine does not apply to a case like this, where a stream or pool of oil is found in the earth beneath its surface, and the earth is dug or bored down to it, by the owners of the land, and which is accessible only through the opening in the earth.

*Blackstone*, 2 *volume, page* 5, asserts that the exclusive property in wells seems to have been established in the digger or occupier as early as the days of Abraham, even in places where the earth and herbage remained in common.

As a well can only be esteemed valuable for what it may contain, and if a man should be considered the exclusive owner of a well even when the earth and herbage remained in common, much more should he be regarded as the owner of a well where he is the owner of the freehold to which it is attached. And if he should be regarded as having the exclusive ownership in the well, he should be considered as having the exclusive property in all that well contains, whether it be water or oil; and if he has a right of property in the contents of the well, no act of a trespasser, by taking and carrying off the contents of the well, can so far change the right of property as to deprive him of it, or of his right of action for the recovery of the specific thing itself.

This case is more analogous to the case of coal or mineral embedded in the earth to which the owner of the freehold opens a way of access, than to the case of water running upon the surface of the earth, and surely no doubt could be entertained of the right of the owner of the freehold to recover the coal or mineral taken from his soil by entering an opening which he had made, and quarrying and carrying off his ore, or that digging and carrying it away would change the right of property. Before it was dug it was the property of the owner of the soil; the

mere act of digging and carrying away could not change the right of property.

There was no such accession to the oil in this case by labor as changed its character. (See *Lampton's Ex'r vs. Preston's Ex'r*, 1 *J. J. Marshall*, 454; *Burris, &c., vs. Johnson*, 1 *Ib.* 196; 2 *A. K. Marshall*, 449.) Nor is there such a change in the character or specific quality of the material as to change the right of property. It was a liquid before it was drawn from the well; it is a liquid still. It was oil before drawn from the well; it is oil still, and the same identical oil taken from the well.

The instruction ought not to have been given for another reason. The suit is brought for the wrongful taking of the oil, as well as for its wrongful detention, and to recover its value. (*Code of Practice, sec.* 137; *Faris vs. Carver*, 13 *B. Mon.* 236.) And if the action cannot be maintained for the recovery of the thing, it surely can for the taking wrongfully.

*J. F. Bell*, for appellee—

In this action the plaintiff sought to recover three barrels of American oil.

It is not an action of trespass to the plaintiffs soil, in which, as an incident, damages are sought for taking away any substance found either on or under the ground, but is for the specific recovery of the oil itself in the barrels.

The plaintiffs were non-suited in the Circuit Court, and we insist rightly so.

Had the plaintiffs such property in the oil, contained in the three barrels sued for, as would enable them to recover it.

It is not pretended that the barrels which contained the oil belonged to the plaintiffs or that to them the plaintiffs had any right whatever.

It may be assumed that the plaintiffs were the owners of the land on which the oil-well or spring was situated—from which that in contest was taken by defendants and placed in their three barrels. That

the oil was in a running stream below the surface of the earth, that there was a pump and other fixtures by which it was raised to the surface and reduced to actual possession.

It may be admitted that the plaintiffs could have sued for the trespass to their soil by defendants, and recovered damages—it may be, a sum equal to the supposed value of the oil—because the jury would have had the power in giving damages for the trespass to have given as smart money, enough to have paid for the whole estimated value of the oil. This would have been within the peculiar province of the jury, in the trial of such an action. But such a concession does not admit the right of the plaintiffs to sue for and recover everything, the taking of which might be given in evidence to the jury as matter for the enhacement of damages. A trespasser goes upon my land without leave, and shoots and carries off animals *feræ naturæ:* I may sue him for the trespass, and the jury would, in the determining the amount of damages, rightly consider the kind of animals killed and carried off, and might perhaps, in that view, consider whether they were or not such animals as the plaintiff would likely have killed and gotten himseif or not; but certainly the game killed could not be recovered in kind; in that the plaintiff would have had no such property as that he could have by suit obtained it. And the great reason why he could not have recovered such things, is that there was no certainty that he could have used them if the trespasser had not killed them—because they were here to day and might have been gone to-morrow— they were fugitive in character, not reduced to possession, and no certainty they ever would be. Therefore the law recognizes no such property in them as that they can be sued for and recovered in kind.

A trespasser takes from the Blue Lick Spring several barrels of the mineral water: the barrels are his own; could the proprietors recover the water in the barrels? Certainly not; and for the same reason

that the proprietor of the land could not have sued for and recovered the game killed by the trespasser. The water—i. e. the individual particles which are ever rising to the surface and ever running in their appointed course—is not the subject of such property as to be sued for and recovered if taken from the fountain or the stream by the tresspasser.

The analogy between these cases supposed and that of the oil-well is strong. The oil is ever moving, ever escaping, and if the defendants had not obtained that which they put in their barrels, there is no certainty the plaintiffs ever would have gotten one drop of that which was in defendant's barrels. In fact the almost absolute certainty that they never would have gotten a particle of that identical oil.

In a suit for trespass to plaintiff's soil, and for the incidental injury in taking away oil running under ground, the question whether the oil was abundant or scarce, whether more than plaintiffs could have used or less, would have appropriately claimed the consideration of the jury in determining damages; but certainly could throw no light on the question of property.

The plaintiffs had never reduced to or had in their possession the oil in defendants barrels, and which is sued for in this case, and therefore could have no property in those particular particles of oil there collected by the defendants.

The erection of the pump and other machinery, whereby the oil was to be collected and reduced to possession, was not a reduction to possession any more than the obtention of a cup or the procurement of a gun, whereby the owner of a spring may dip up the water, or the proprietor of the land shoot the game, is a reduction to their respective possession, the water in the spring or the game on the farm.

Could the defendants have been held guilty of larceny of this running oil? Could larceny have been committed of this *running oil?* Could the indictment

allege that the oil thus taken from the running stream was the property of the proprietor of the land? as should have to be done to make it good. We insist not.

The case is a novel one, and not decided so far as we know; but after referring to the elementary authors to which we have had access and to which reference is made in the brief to which this is a supplement, we insist that the law and its analogies determine that the thing sued for was not susceptible of such property. That the plaintiffs had no such property in the thing sued for as that they could recover, and that the non-suit was proper. Wherefore, an affirmance is asked.

*Tho. E. Bramlette*, on the same side—

This action is to recover — barrels of American oil which the plaintiff claimed as having been drawn from his oil-well by the defendants.

The defendants drew the oil, put it in their own vessels, and their own labor, and drew the oil under their own claim. The plaintiff was *non-suited*. The question presented, arising upon the instructions to find for defendants, is whether a stream of oil passing under the surface of the ground and reached by a pump is *personal* property, absolutely vested in the owner of the ground and fixtures, such as to entitle him to *recover the oil* of a trespasser who draws and appropriates to his own use.

That the instruction is right, is clear from the following considerations: The proof shows that the oil was drawn from a *stream* or *current* flowing under ground, and reached by the pump claimed by plaintiff.

A current or steam flowing on the surface, is not capable of anything but a usufruct enjoyment. (*Bouv. Institutes*, 2 vol. No. 1612, *page* 175.) The only right is to the temporary use—the right to the *current*, not to the *water itself*. The same elementary principle is held by *Kent's Com.* 3 vol. *page* 439: "He has

no property in the water itself, but a simple usufruct while it passes along." Blackstone states the same doctrine. (2 *Bl. Com.* 14:) "Water being a moveable, wandering *thing*, there can only be a temporary, transcient, usufructuary property therein." (*Wharton's Lex. title Water.*")

This is the principle applied to water by the elementary writers, and by all cases decided, when upon the surface. Why is it and has it so been held? Because a flowing stream runs where nature ordered it, and it is but *transiently* upon the land of one man, then passes *naturally* to another, &c., and no man may acquire the right to pursue and *recapture* the water or stream when it has flowed on to another's land— hence he can only have an usufruct while passing, and no *right to the water itself*. For if he had a right to *the water itself* he might pursue and take it whithersoever it flowed. And this is the test of property. The right to have the property, to pursue personal property, and retake whenever it escapes the possession of the owner. This is the reason, the foundation of the principle. It is not realty, because of its unstable character; is not personalty, because the right to pursue the flowing stream and retake it cannot exist. Hence no right to the waters can exist; only the right to have it flow, (to the current,) where nature directs, and to use it while so flowing. There can be no distinction drawn between the stream which flows below and the one which flows upon the surface. The elementary principle is the same. It matters not whether you dip it out with a *gourd* or raise it with a pump. No right to the *water* attaches above the usufruct until it is actually *appropriated*, separated from the stream, and so secured as to preserve its identity—until it is so secured as to partake of the nature of personalty—the capacity of being *carried about* or *removed* with the person at the will of the owner. And hence he who so secures it becomes the owner, although in doing so he may have committed a trespass on another's land. These principles

must of necessity apply to all streams, whether they be limestone, freestone, salt, mineral waters, a flowing stream of oil, all being "a moveable, wandering thing," whether above or below the surface.

February 3.

Chief Justice MARSHALL delivered the opinion of the Court—

This action was brought by Hail and two others, to recover from Reed and Alexander three barrels of American oil, each containing forty gallons, worth $1 25 per gallon, of which the petition states that the plaintiffs are the owners, and entitled to the possession, and that they are in possession of the defendants, without right, and illegally detained by them. By a proper affidavit filed with the petition, the plaintiffs obtained a writ or order for the delivery of the property, under which the three barrels of oil were delivered to them, on their executing the required bond, to return them, &c., according to the result of the action.

The defendants in answer state, 1st. That the oil was, by their labor and at their expense, taken from a well which was part of a freehold, and which oil was attached to the freehold and constituted part of it until drawn and severed therefrom by the defendants, who placed it in their own barrels, being the same oil claimed by the plaintiffs; and 2. They say they had possession of three barrels of American oil which, by their labor and at their expense had been drawn from a well, bored down to a running stream of oil, which the plaintiffs had never reduced to possession, but was a vague and fugitive stream, not confined or in possession of the plaintiffs, and the defendants took, at their own expense, from the stream, the oil in the petition mentioned, and barrelled it in their own barrels, and had it in their own possession without wrong, and as and of their own property, &c.

The first of these defenses seems to be founded upon the idea, that, as the oil was once a part of the

freehold, though it became personalty by being severed, an action could not be brought for it in that condition, even by the owner of the freehold. The reason for such conclusion is not stated. But it may be presumed to have been either because the oil was supposed not to continue to be the property of the freeholder after severance by a stranger, or because the stranger, by severing it and placing it in his own barrels, became the owner. In this defense, the peculiar nature of the oil, and the question whether there is or can be any peculiar and individual property in it until severed and confined or appropriated, are not brought into view. The defense rests upon the fact that the oil was a part of the freehold, and was taken therefrom by the labor and cost of the defendants, and placed in their own barrels. The simple question upon this ground of defense seems to be, whether the owner of the freehold may recover specifically that which was once a part of his freehold, but which has been wrongfully severed, or whether the substance thus severed becomes the property of the wrong-doer, because he has been at the trouble and expense of severing it and carrying it away in his own vessels or vehicles. In such case the labor and expense are not bestowed upon the thing itself, but in acquiring the possession of it and in committing the wrong. And there can be no pretense that on this ground the right or property in the thing is changed. It is stated by Chitty in the 1st volume on Pleading, page 147, that the action of trover is confined to the conversion of personal chattels, and does not lie for fixtures *eo nomine*, or for injuries to land. But if, after severance from the freehold, as in case of trees, or fixtures, or earth, the property severed be taken away, or if coals, dug in a pit, be afterwards taken away, trover may be supported. And in page 148, it is laid down that to support this action the plaintiff must have a complete property, general or special, in the chattel, and also the actual possession, or the right of immediate possession of it.

Which right of immediate possession is presumed to be with the general owner, and as matter of law is drawn to the ownership, unless the owner has otherwise disposed of it, and which therefore exists in full force against the wrongful taker, until barred by time or contract. This is too well settled to require a citation of authority.

The principles which have been stated show that although the severance of a part of the freehold changes that part from realty to personalty, it does not divest the owner of the freehold of his right of property and ownership, nor of the consequent right of immediate possession. And this ownership and right of immediate possession, which will sustain an action of trover, will also sustain an action of detinue. (1 *Chitty's Pl.* 122.) Or if the taking be wrongful, an action of replevin. (*Ib.* 163.) And they will therefore sustain the present action, whether it be regarded as in the nature of detinue or of replevin.

The second ground of defense relies upon the fact that the oil was taken from a well bored down to a running stream of oil, which was vague and fugitive, and had not been confined, nor ever reduced to possession, nor ever in possession of plaintiffs. And in support of this ground we are presented with a very ingenious argument, founded on the principles laid down by elementary authors with respect to water, which Blackstone, 2 *Book of Com. side page*, 14, says must unavoidably remain in common, susceptible only of a usufructuary property, belonging to the first occupant during the time he holds possession of them, and no longer. Whence it is argued that this oil, being a liquid like water, and flowing, as alleged, in a stream at the bottom of this well, was common to all, susceptible only of a usufructuary property, and that the particular portion of it now in contest belonged to the defendants, as the first occupants and appropriators of it.

But it is to be observed that the portion of Blackstone to which reference is made, is a treatise upon

property in general; that is, upon the principles on which the right of property in external things depends, and which he states especially with respect to water, the broad principles applicable to the subject in its most general aspect, without reference to any distinctions or discriminations by which they might be modified. Then, besides the fact that water is not oil, and that while nature furnishes the former almost everywhere, for the common use of man, as being a universal necessity, she furnishes the latter, for the most part, only as the result of arduous labor and intricate processes, and but rarely produces it in its perfect state; it is to be remarked that water itself, though found generally running upon the surface of the earth, where it may be obtained for use by merely taking it, and where, being furnished by nature for the use of all who may conveniently use it, it is only to be appropriated by use and for use, yet it is also frequently found under the surface, and obtained or reached at great expense and labor, by means of wells by which it is intended to be appropriated. This discrimination is not made, nor was it necessary for the purposes of the author that it should be made in the general view which he was taking of property in general. The very title of the chapter, and the nature of his observations, would lead to the conclusion that he was speaking of water as it is furnished by nature for the ordinary use of man, and as it is commonly found running upon the surface of the earth. The very fact that, after illustrating the principle of property being founded on occupancy and on labor, by reference to the well made by one of the ancient patriarchs, he takes no notice of wells when he comes to treat of wa.er as a subject of property, shows that he thought only of water on the surface, or that he considered a well by which it might be obtained from beneath the surface as a means of appropriation.

The other authorities referred to, viz: 3 *Kent's Com.* 438, and 2 *Bouvier's Institutes,* 174, treat espe-

HAIL, &c.
vs.
REED, &c.

cially of water on the surface; the first considering the subject under the title of running waters, and showing that he is considering water running over land, and the other treating the subject under the title of water courses, and both stating chiefly the rights of riparian owners. The latter, however, (2 *Bouvier*, 173,) treats specially, though briefly, of springs, as to which he says, the owner of land is entitled to all advantages arising from it, and may use a spring found upon it, as he does any other property, without regard to the convenience or advantage of others. And that this right is very different from the right of the owner of an estate through which water flows. What becomes, then, of the common right of all to the use of the water in the spring, if it may be thus exclusively claimed and used and owned by the owner of the soil. And if the water in a spring found on his land is thus his exclusive property, there seems to be much more reason to say that water at the bottom of a well which he has by his labor and expense constructed for the very purpose of retaining water in it for his use, and of facilitating the access to it, is his exclusive property. And still stronger is the reason for considering him as the exclusive owner of oil, a peculiar liquid not necessary nor indeed suitable for the common use of man, and for reaching and obtaining which for its proper uses and for profit, he has constructed a well with suitable fixtures.

It is indeed said in the answer, though it is scarcely to be seen in the evidence, that this well is bored down to a stream of oil. But while there are but slight traces even of a seeping of oil through the well, it is neither alleged nor proved that the well presents no obstruction to the stream or flow of oil, or that it does not hold or retain at least a portion of it, for facility in drawing it out. We know that in wells for drawing water it is usual, and, where the supply is small, necessary to sink the well below the point where the water enters it, so that it may be retained there in sufficient quantities for use, and for drawing it up.

*If the owner of land sink a well from which oil is taken, the oil thus taken is his property, and he may recover it, by action of detinue, or its value, in an action of trover, from one who takes it from the well.*

There is nothing to show that this was not the case in the present instance, and the jury might have so found.   But we are of opinion that whether the water or oil is running through the well in a stream or not, that which is actually in the well is, while it is there, and subject to be drawn out, though it be there only in passing from one side of it to the other, appropriated by the owner to his own use, and belongs to him when it is drawn out, unless this is done by his license and for another's use. If, as may be presumed, the well is sunk below the point at which the water or oil enters, or if the water or oil, in any quantity, stands in it until drawn out, the evidence of appropriation is still stronger, and the right of the owner more easily established.   And in either case, the water or oil, if drawn up by a wrong-doer, is the property of the person entitled to the well, or its exclusive use, and may be specifically recovered.   Whether the barrels in which the wrong-doer has placed it may also be recovered with the oil, or other barrels should be furnished by the owner, we need not at present decide.

It follows, from the foregoing views, that the court erred in instructing the jury upon evidence which authorized them to find the facts as above assumed, that upon the whole evidence they should find for the defendants.

Wherefore, the judgment is reversed, and the cause remanded for a new trial, on principles in conformity with this opinion.