### Scott v. Laws.

(Decided October 21, 1919.)

#### Appeal from Floyd Circuit Court.

1. Mines and Minerals—Deeds—License.—The rule that a mining privilege is sometimes regarded as a mere license which may be

lost by nonuser is confined to cases where the privilege is limited and no exclusive right in the minerals themselves is granted.

2.  Mines and Minerals—Deeds—Construction.—Under a deed conveying "all of the mineral right and coal privileges and rights-of-way to and from said minerals and coal privileges; also the right to search for all undiscovered minerals and coals upon the land hereinafter described," and containing the provision that the grantor "hath sold and doth hereby convey the above described privileges" unto the grantee, "forever free from me, my heirs and assigns," the title to all the minerals passed to the grantee.

3.  Mines and Minerals—Mineral Right—Nonuser—Limitation.— Where there has been a severance of the mineral estate from the surface estate, the owner of the minerals does not lose his right or his possession by any length of nonuser, and the owner of the surface can acquire no title by the statute of limitations to the minerals by his exclusive and continued occupancy and enjoyment of the surface merely.

4.  Mines and Minerals—Deeds—Construction.—A grant or exception of minerals will include all inorganic substances which can be taken from the land, and to restrict the meaning of the term there must be qualifying words or language evidencing that the parties contemplated something less general than all substances legally cognizable as minerals.

5.  Mines and Minerals—Deeds—Construction.—Under the deed above set out, the title to the oil and gas passed to the grantee.

R. H. COOPER, STRATTON & STEPHENSON, D. H. HATCHER and HOBSON & HOBSON for appellant.

W. H. MAY for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

On and prior to December 16, 1859, James H. Laws was the owner of a large tract of land adjoining the lands of Valentine Gearheart. On that day Gearheart executed and delivered to Laws a deed, the material parts of which are as follows:

"This Indenture, made and entered into this 16th day of December, 1859, by and between Jas. H. Laws, of the city of Cincinnati and State of Ohio, of the first part, and Valentine Gearheart and Sallie Gearheart, his wife, of the county of Floyd and State of Kentucky, of the other part,

"Witnesseth: That the said Valentine Gearheart, for and in consideration of the sum of two hundred dollars in hand paid, the receipt thereof is hereby acknowledged, paid by the said Jas. H. Laws, hath bargained and sold to

the . . . Jas. H. Laws the following described property, and doth hereby convey the same to-wit:

"All of the mineral right and coal privileges and rights-of-way to and from said minerals and coal privileges, also the right to search for all undiscovered minerals and coals upon the lands hereinafter described, and being and lying in the county of Floyd and State of Kentucky and on the waters of Tolar's Creek, and upon the land where said Gearheart now lives, bounded as followeth:

. . . . . .

"Now, I, said Valentine Gearheart hath sold and doth hereby convey the above described privileges unto the said James H. Laws forever, free from me, my heirs and assigns, and will forever warrant and defend the same; and I, the said Sallie Gearheart, wife of said Valentine Gearheart, doth hereby convey and release . . . all right in and to dower in the foregoing described privileges."

On March 1, 1860, Laws and wife conveyed all of his lands, including that deeded to him by Valentine Gearheart, to the Big Sandy Coal Mining Company, which in turn mortgaged the property to Laws to secure the payment of certain bonds. Thereafter, Laws died and the bonds descended to his son and only heir, Harry L. Laws. He brought suit in the Federal court to enforce his mortgage lien and became the purchaser of all the property covered by the mortgage.

L. Dow Scott, who purchased from the heirs of Valentine Gearheart by deed dated July 29, 1905, brought this suit against Harry L. Laws to quiet his title to the minerals. Laws answered and asserted title by virtue of the conveyances and the proceedings above set out. To this answer plaintiff filed a reply, interposing among other defenses a plea of limitation. On final hearing plaintiff's petition was dismissed, and Laws was adjudged the owner of the mineral rights and coal privileges in the tract of land in controversy. Plaintiff appeals.

It is the contention of plaintiff that Valentine Gearheart conveyed to Harry L. Laws' predecessor in title only a mining privilege, which was abandoned and lost by a failure for more than forty years to develop the property.

In this connection, great stress is placed upon the fact that Valentine Gearheart only sold and conveyed "the above described privileges," and that Sallie Gear-

heart conveyed and released only her dower right in the "foregoing described privileges." It is therefore argued that the case is one falling within the rule laid down in 27 Cyc. 683, in the following language: "But where it is apparent that the intention of the parties is that the grantee shall have merely the right to enter and remove the minerals, rather than the absolute title to minerals in place, there is no severance of the estates in the surface and in the minerals, but the grant is a mere license and the grantee acquires absolute title to only what is removed by him." An examination of the authorities on the question will show that the rule that a mining privilege is sometimes regarded as a mere license, which may be lost by nonuser, is confined to cases where the privilege is limited and no exclusive right in the minerals themselves is granted. Shepherd v. McCalmont Oil Co., 38 Hun. (N. Y.) 37; Grubb v. Grubb, 74 Pa. St. 25; Arnold v. Stevens, 24 Pick (Mass.) 106, 35, Am. Dec. 305; Johnston Iron Co. v. Cambria Iron Co., 29 Pa. St. 241, 72 Am. Dec. 783; Funk v. Haldeman, 53 Pa. St. 243; Clonninger v. Franklin Coal Co., 55 Pa. St. 16; Williams v. Gibson, 84 Ala. 228, 4 So. 350, 5 A. S. R. 368. Here the privilege granted was not limited. The grantor not only sold and conveyed "all of the mineral right and coal privileges and rights-of-way to and from said minerals and coal privileges; also the right to search for all undiscovered minerals and coals upon the land hereinafter described," but he also conveyed "the above described privileges unto the said James H. Laws forever, free from me, my heirs and assigns, and will forever warrant and defend the same," thus showing a clear intention to convey to the grantee the perpetual and exclusive right to all the minerals, and thereby investing him with title to the minerals themselves. Caldwell v. Copeland, 37 Pa. St. 427, 78 Am. Dec. 436; Massot v. Moses, 3 S. C. 168, 16 Am. Rep. 697; Sanderson v. The City, 105 Pa. St. 469; Kennedy v. Hicks, 180 Ky. 562, 203 S. W. 318.

Since there was a severance of the mineral estate from the surface estate, the owner of the minerals did not lose his right or his possession by any length of nonuser, nor did the owner of the surface acquire title by the statute of limitations to the minerals by his exclusive and continued occupancy and enjoyment of the surface merely. 18 R. C. L. sec. 86, p. 1178; Arnold v. Stevens, *supra;*

Gill v. Fletcher, 74 Ohio St. 295, 78 N. E. 433, 113 A. S. R. 962; Farnsworth v. Barrett, 146 Ky. 556, 142 S. W. 1049.

But the further contention is made that oil and gas did not pass by the conveyance in question. Here the grantors conveyed "all of the mineral right and coal privileges and rights-of-way to and from said minerals and coal privileges; also the right to search for all undiscovered minerals and coals upon the lands hereinafter described." The case of McKinney v. Central Kentucky Natural Gas Co., 134 Ky. 239, 120 S.W. 314, 20 Ann. Cases, 934, is relied on. In that case the language of the deed was, "all minerals, such as coal, iron, silver, gold, copper, lead, bismuth, antimony, zinc or any other mineral of any marketable value." It was held that gas did not pass by the conveyance because the words, "any other mineral of any marketable value" were to be read in connection with the things previously named, and should be confined to things of that character. Indeed, the general rule upon the subject seems to be that a grant or exception of all minerals will include all inorganic substances which can be taken from the land, and to restrict the meaning of the term there must be qualifying words or language, evidencing that the parties contemplated something less general than all substances legally cognizable as minerals. 18 R. C. L. sec 84, p. 1176; White v. Miller, 200 N. Y. 29, 92 N. E. 1065, 140 A. S. R. 618. This view of the law was adopted in the case of Kentucky Diamond Mining & Developing Co. v. Kentucky Transvaal Diamond Co., 141 Ky. 97, 132 S. W. 397, where after the case of McKinney v. Central Kentucky Natural Gas Co., supra, was distinguished and explained, the court held that a deed of "all the mineral . . . on described tract," excluding coal for the use of the farm, conveyed all the minerals excepting the coal reserved, and passed diamond, though none of the parties had any idea at the time of the execution of the deed that there were diamonds on the land, and though the grantee thought there was only silver on the land, and though he was prospecting for silver only. Since oil and gas are minerals, and there is nothing in the language of the deed in question which shows that the parties contemplated something less general than all substances legally cognizable as minerals, we conclude that the title to the oil and gas necessarily passed by the conveyance.

Judgment affirmed.