## Federal Gas, Oil & Coal Co. et al. v. Moore et al.

Feb. 14, 1941.

Buford C. Tynes, Ira M. Nickell and Z. Wells for appellants.

John T. Diederich, John Stanley and W. R. McCoy for appellees.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Reversing.

On April 29, 1889, Samuel Moore, Sr., and wife executed and delivered to Henry R. Phillips, trustee, a deed conveying the minerals in certain lands located in Martin County the pertinent parts of which read:

> "The said party of the first part do hereby grant, sell and convey with general warranty to the said party of the second part all the coal salt-water and minerals in and upon and under my farm or tract of land containing 802 acres" (here follows description). "With the right of the said Henry R. Phillips, his heirs and assigns of entry to mine the said coal and salt-water with all the usual mining privileges, reserving to myself fee simple to the surface of my said land and the right to mine coal thereon for my own household use and my heirs so long as I or they occupy the premises."

This deed further provides that if within twenty years the grantee shall elect to take certain designated 10 acres of the surface at the price of $15 per acre, upon the tender of this sum and "filing such written designation with the Clerk of the Martin County Court an absolute fee simple title to so much land and premises as is thus designated shall thereupon vest in him without further conveyance * * *."

On December 22, 1886, Samuel Moore, Sr., executed to F. Prentice an oil and gas lease on 700 acres of land in Martin County, which land is not identified particularly

in this record. This lease was for a term of thirty years and provided for the drilling of a well in the "Martin District" within one year or the payment of a rental equal to the taxes on the land. None of the conveyances in this record executed by Moore from 1886 to 1891 refer directly to this lease.

On July 24, 1891, Moore conveyed 100 acres of the 802-acre tract to his son, Albert, and on the same date conveyed 151 acres of same to his son, Lincoln, and the latter on November 28, 1910, conveyed this 151 acres to Albert. All three of these conveyances contained this clause, or one very similar to it: "the mineral rights have heretofore been sold and are excepted." Albert executed an oil and gas lease on these two tracts aggregating 251 acres (designated in the lease at 260 acres) to John T. Diederich, trustee, on June 4, 1930. Diederich refused to accept this lease from Albert until he had read the Moore-Phillips deed and examined the records in the county court clerk's office relative to other deeds taken by Phillips about the year 1889. Concluding that Albert had title to the oil and gas under this 251 acres, Diederich accepted the lease and assigned it to the D. B. & M. Oil and Gas Company.

In 1931, Diederich, Albert and the D. B. & M. Oil and Gas Company instituted this action to quiet title against the Federal Gas, Oil & Coal Company, Warfield Natural Gas Company and Virginian Gasoline & Oil Company, all of which claimed title to the minerals under this land by mesne conveyances from Phillips, trustee. The petition alleges that Samuel Moore, Sr., and Phillips did not know oil and gas existed under this land in 1889 when he conveyed the minerals to Phillips, and as they did not contemplate a conveyance of the oil and gas, such were not included in the term "minerals." By an amendment this part of the petition was withdrawn, and it was alleged that oil and gas were included in the draft of the original deed submitted to Samuel Moore, but he refused to sign same until the words "oil and gas" were struck therefrom; that these words were struck from the deed and were not in it when Samuel Moore, Sr., signed and it was not the intention of the parties to, and they did not, include oil and gas in the minerals conveyed to Phillips.

Defendants filed a general demurrer to the petition as amended which was overruled. Thereupon answer

was filed traversing the plaintiffs' pleadings, followed by an affirmative plea of the statutes of limitations, and of champerty. Much proof was taken, and upon the case being submitted to the chancellor, he adjudged the plaintiffs to be the owners of the oil and gas in the 260 acres described in their petition, and defendants appeal. The plaintiffs offered no competent proof that Samuel Moore, Sr., required the words "oil and gas" to be stricken from the deed before he executed it to Phillips in 1889, and the question for determination is whether or not the word "minerals" as used in that deed included oil and gas.

"The rule followed in this and practically all other jurisdictions is that a grant or exception of 'minerals' in a deed includes all mineral substances which can be taken from the land unless restrictive language is used indicating that the parties contemplated something less general than all substances legally cognizable as minerals." Maynard v. McHenry, 271 Ky. 642, 113 S. W. (2d) 13, 14; Kentucky Diamond Mining & Developing Co. v. Kentucky Transvaal Diamond Co., 141 Ky. 97, 132 S. W. 397, Ann. Cas. 1912C, 417; Waugh v. Thompson Land & Coal Co., 103 W. Va. 567, 137 S. E. 895.

The word "minerals" in a grant or exception includes oil and gas unless the language of the deed discloses an intention to exclude them. Maynard v. McHenry, supra; Kentucky West Virginia Gas Co. v. Preece, 260 Ky. 601, 86 S. W. (2d) 163; Scott v. Laws, 185 Ky. 440, 215 S. W. 81, 13 A. L. R. 369. It is only where the language of a grant or exception is ambiguous that extrinsic evidence is admissible, and if there are no restrictive words, a conveyance or exception of minerals will include "oil and gas." Maynard v. McHenry, supra, and the many authorities therein cited.

Is the language in the grant in the deed before us ambiguous? It conveys "all coal salt-water and minerals in and upon and under my farm." Certainly there is no ambiguity there. The deed conveys both solid and liquid minerals and it is within the common knowledge of mankind that oil is usually found in salt-water, or at least in close proximity thereto. Therefore, the doctrine of ejusdem generis discussed in so many of the cases cited by plaintiffs, Huie Hodge Lumber Co. v. Railroad Lands Co., 151 La. 197, 81 So. 676; McKinney's Heirs v.

Central Kentucky Natural Gas Co., 134 Ky. 239, 120 S. W. 314, 20 Ann. Cas. 934; Rudd v. Hayden, 265 Ky. 495, 97 S. W. (2d) 35; Hudson & Collins v. McGuire, 188 Ky. 712, 223 S. W. 1101, 17 A. L. R. 148, does not exclude oil and gas from the deed Samuel Moore, Sr., executed to Phillips.

But the plaintiffs argue that the provisions of the deed relative to the easements given the grantee in removing the minerals are restrictive and indicate that only "hard minerals" or such minerals as are mined by shafting or tunneling were conveyed, since the grantee was given the privilege "of entry to mine said coal and salt-water with all the usual mining privileges." They put much reliance in Rock House Fork Land Co. v. Raleigh Brick & Tile Co., 83 W. Va. 20, 97 S. E. 684, 17 A. L. R. 144, in support of their position. In the Raleigh case the grant was "all the coal and other minerals of every kind and description, except gas and oil in and underlying said land;" with the mining rights reading:

> "together with the privileges to use so much of the stone and water in and upon the aforesaid land as may be necessary or desirable for the convenient operation of a coal mining or mineral plant, also including the right to enter upon said land and to mine, excavate and remove all the coal and to make and maintain all necessary railroads, excavations, ways, shafts, drains, drainways, and openings necessary and convenient for the mining and removal of said coal and other minerals * * *."

The question in the Raleigh case was whether or not brick clay was included in the minerals granted. The court pointed out that the terms "mine" and "mineral" are indefinite terms and are susceptible of limitations according to the intention with which they are used, and that often the character of the mining rights granted has been held to determine the limit of the minerals conveyed. The court there held the wording of the mining privileges contained in the deed showed the parties intended that the minerals conveyed were limited to such as are produced by sinking shafts and tunnels, and as brick clay was not thus produced, it was not included in the mineral grant.

In the instant case salt-water was expressly named in the grant, and as it is produced in the same manner as

oil by drilling a well and pumping it out of the ground, it cannot be said that the terms of the mining easement "of entry to mine said coal and salt-water with all usual mining privileges" indicated that the parties contemplated or intended a conveyance of only "hard minerals" or such as are produced by shafting or tunneling. Since the grant included "all coal salt-water and minerals in and upon my farm" and as the terms of the mining privileges did not limit the operations to the removal of "hard minerals," we are convinced such mining privileges failed to indicate the parties did not intend to include oil and gas in the minerals granted. In the deed before us there is no ambiguity, therefore extrinsic evidence was not admissible. As there were no restrictive words in the deed, oil and gas passed under a general conveyance of "all coal salt-water and minerals."

We are fortified in the conclusion reached since the deed expressly reserved the surface to the grantor. Also, it contained a covenant to the effect that Phillips could at any time within twenty years obtain a certain 10 acres of the *surface* of the land by tendering $15 per acre and filing a written designation with the Clerk of the Martin County Court whereupon Phillips would secure "an absolute fee simple title to so much land and premises as is thus designated shall thereupon vest in him without further conveyance * * *." This covenant clearly shows that the grantor had conveyed everything in this 802-acre tract except the surface; and it provides that should Phillips exercise his right to obtain 10 acres of the surface, he would thereby have a fee simple title to such ten acres. It is evidence that had the mineral deed not conveyed everything except the surface of the land, Phillips could not have obtained a fee simple title to the ten acres merely by acquiring the surface, since the grantor would have retained any minerals not included in the deed he executed to Phillips, and such minerals as the grantor thus retained would not pass with a conveyance of the surface of the ten acres.

Although the plaintiffs were not entitled to introduce extrinsic evidence, since there was no ambiguity in the deed, such extrinsic evidence as they did adduce had no convincing value. The fact that Tynes, attorney and general manager for the Federal Gas, Oil & Coal Co., took an oil and gas lease in his individual capacity on a part of the 802-acre tract on February 24, 1916, without

knowing (so he testified) that it was a portion of the land in which his company owned the minerals, could not affect his company's title. And the fact that Phillips in 1889 took certain mineral deeds in the vicinity of this land which did not include oil and gas could be of no help in determining what minerals were conveyed in the deed Samuel Moore, Sr., executed to Phillips. However, a reference to the deeds by which Samuel conveyed the lands in controversy to his sons, Albert and Lincoln, and to the deed by which Lincoln conveyed the 151 acres to Albert, is illuminating. All three of these deeds relate to the land in controversy and contain a clause to the effect that as the minerals were previously conveyed they were·excepted and did not pass to the grantees. However, there is no evidence in the record showing such exceptions related to this Prentice lease, and it is logical to believe such lease had expired from non-development accompanied by the failure to pay rentals. Attention is directed to the fact that the Prentice lease covered only oil and gas while the exceptions in the three deeds just mentioned recite *the mineral rights have heretofore been sold and are excepted.* "Mineral rights" is a much broader term and is more inclusive than the term "oil and gas," and from this record it is more reasonable to believe that when Samuel Moore, Sr., excepted the minerals from the deeds made to his sons, Albert and Lincoln, reciting they had theretofore been conveyed, he referred to the mineral deed he had executed to Phillips rather than to the oil and gas lease he had executed to Prentice some three years previous.

The chancellor erred in adjudging that oil and gas were not included in the minerals conveyed in the deed Samuel Moore, Sr., executed to Phillips on April 29, 1889, therefore the judgment is reversed for entry of a judgment consistent with this opinion.