## Clements et al. v. Morgan et al.

March 9, 1948.

Rehearing denied June 11, 1948.

E. R. Morton and King & Flournoy for appellants.

Harris & Drury, Hugo Taustine and N. Powell Taylor for appellees.

OPINION OF THE COURT BY JUDGE KNIGHT—Reversing.

That part of this suit now before us on this appeal arose out of a cross-petition filed in the court below by appellants against appellees and by which they sought to have their title quieted to the oil, gas and other minerals, except coal, on and under a tract of 185 2/3 acres of land in Union County, Ky., fully described in the petition and referred to in the cross-petition. Answers and replies were filed, and on October 21, 1946, appellants filed an amended reply with certain exhibits attached to and filed therewith. A demurrer was sustained to the amended reply and appellants declining to plead further, it was adjudged, on the pleadings and exhibits filed, that appellee Mrs. Catherine Morgan is the owner of 1/7 interest in the oil and gas underlying the 185 2/3 acre tract of land in controversy; that appellees George Pike and Marguerite Clements are joint owners of a 1/7 interest in said oil and gas; that appellees Emma Hamilton, Sylvester Newman, Agnes Marie Newman, Mary Bernadette Moorman and Mary Julia Newman are joint owners of a 2/7 interest in said oil and gas. It was adjudged that the title of said appellees in and to said gas and oil be quieted against appellants, who were adjudged to have no claims of any kind in the respective portions of the appellees. The remaining 3/7 interest in the oil and gas is not involved in this appeal. Costs were adjudged against appellants. From that judgment, appellants prosecute this appeal.

## Facts in the Case

Sylvester Pike was an extensive land owner in Union County prior to his death in 1907. He was the fath-

er of seven children, to-wit: George S. Pike, a son, now deceased, who was the father of the appellees Marguerite Pike Clements and George Pike; Ben J. Pike, a son, who is not interested in this appeal; Emma Newman, a daughter, who died while this suit was pending, leaving surviving her five children, Emma K. Hamilton, Sylvester Pike Newman, Agnes Marie Newman, Mary Bernadette Moorman and Mary Julia Newman, appellees herein; Sister Agnes Maria Pike, a daughter, who is not interested in this appeal; W. D. Pike, a son, who died, testate, unmarried and without issue, whose property was devised to Emma Newman, a sister, above named; Mary Clements, a daughter, who is not interested in this appeal; Catherine Pike Morgan, a daughter, appellee. Among the tracts of land owned by Sylvester Pike was one of 371 1/5 acres of which the 185 2/3 acre tract involved in this case is a part. By deed dated October 2, 1903, he and his wife conveyed to the National Coal & Oil Company the coal and mining rights in a number of tracts, including the 371 1/5 acre tract, which, of course, included the 185 2/3 acre tract here involved. On October 31, 1903, he and his wife conveyed to his son, Ben J. Pike, and to his daughter, Mary B. Clements, jointly, in consideration of the love and affection which they bore to these two children of theirs, the fee simple title to the 371 1/5 acre tract reserving certain mineral rights, as will hereinafter be set out. This deed did not describe the tract by metes and bounds but by a general description of its east, west, north and south boundaries, and directed that the land be divided equally between the two grantees. The land was subsequently surveyed and divided into two tracts. Mary B. Clements and her husband conveyed her interest in the eastern 185 2/3 acre tract to Ben J. Pike, excepting from their warranty the coal rights which had previously been sold. With this tract, we are not concerned in this litigation. At the same time Ben J. Pike and wife conveyed to Mary B. Clements the western 185 2/3 acre tract, excepting from their warranty *"the coal rights lying under said lands which are supposed to have been heretofore disposed of."* It is this tract only which is involved in this litigation. Later, on September 19, 1913, Mary B. Clements and G. W. Clements, her husband, conveyed the 185 2/3 acre tract involved in this

litigation to S. W. Clements, one of the appellants herein, excepting therefrom *"the coal rights under the said land which have been heretofore disposed of and are excluded and reserved from this conveyance."* The title to this tract still stands in S. W. Clements, appellant, so far as this record shows.

### The Question Involved.

The only question involved in this case is the construction of the words of conveyance of certain mineral rights contained in the deed from Sylvester Pike and wife to the National Coal & Oil Company and the reservation of certain mineral rights contained in the deed from said Pike and wife to his son, Ben J. Pike, and his daughter, Mary B. Clements, heretofore referred to. In order that they may be shown and construed together, we set them out below:

In the deed from Sylvester Pike and wife, to the National Coal & Oil Company, dated October 2, 1903, the grantors conveyed to the grantees the coal rights under the 371 1/5 acre tract in the following language:

*"All the coal and mining rights and privileges."*

It is conceded by all parties that this conveyed only the coal with the usual mining rights and privileges incident thereto and this question is not involved in this litigation.

Twenty-nine days later, on October 31, 1903, Sylvester Pike and wife conveyed the fee to the 371 1/5 acre tract, above referred to, to his son, Ben J. Pike, and his daughter, Mary B. Clements, with this reservation in the deed:

*"And the coal and mineral privilege is hereby reserved having heretofore been sold."*

The question then is: Did Sylvester Pike by the language used in the deed to Ben J. Pike and Mary B. Clements mean to reserve to himself *all* the minerals, including oil and gas, but excluding the coal which he had sold to the National Coal & Oil Company, as contended for by the appellees, and as the court below decided, or did he mean to convey to his said son and daughter the fee simple title to all the tract, including *all* minerals, such as gas and oil, but excluding the coal

and mining rights and privileges which he had recently sold to the said company, as contended by the appellants, and which construction they are, by this appeal, asking this court to adopt, thereby reversing the decision of the chancellor?

We are in the dark as to the grounds upon which the chancellor based his decision since he did not favor us with an opinion giving his views. However, it seems to us that there can be but one answer to the question involved here if we avoid fine hairsplitting distinctions and metaphysical reasoning and drive straight down the line at what appears to be the manifest intention of the grantor.

It is, of course, fundamental law that in construing a deed the cardinal rule of construction is to arrive at the intention of the grantor, just as in the construction of wills, we seek to arrive at the intention of the testator. Now what was the manifest intention of the grantor in this case? Clearly it was to convey to his son and daughter the fee simple title to the tract of land described in the deed to them. But knowing that less than 30 days before he had conveyed the coal under this land to a corporation and could not again convey the coal and mining rights and privileges, he, of course, excluded them by using what, in effect and to all intents and purposes, is the same language he had used in conveying the coal rights, calling it in this latest conveyance, "coal and mineral privileges" instead of "coal and mining rights and privileges," as he had said in the previous deed. Can there be any difference here except the difference between tweedledee and tweedledum? We think not. But if by metaphysical reasoning a distinction between these two phrases could be drawn, we think the grantor of the deed put the "clincher motion" when he added that this coal and mineral privilege is hereby reserved, *"having heretofore been sold."*

In our minds we cannot find any reasonable support for the idea that the grantor, by using the words, *"mineral privilege"* in the deed to his son and daughter, meant anything different from the words, *"mining rights and privileges"* used in the deed to the coal company and that in reserving these rights as having heretofore been sold he meant exactly the same thing as if

he had said in the later deed, *"and the coal and mining rights and privileges are hereby reserved having hereto been sold."* Only the coal being reserved because it had been sold, it follows that all other minerals, including oil and gas, passed with the fee to his son and daughter and by mesne conveyances to the appellants herein.

But, say the appellees in their brief, the province of the court is to determine what the grantor meant by what he did say and not to conjecture what he may have meant to say and that having used the words *mineral privilege* in the reservation in the deed to his son and daughter, he meant to reserve all minerals other than coal. They then cite a number of cases in which this court has held that the word *minerals* include all mineral substances which can be taken from the ground, including gas and oil. We fully recognize all these cases and their definition of minerals. We fully recognize the rule of construction that it is what a man says, not what he meant to say, that should control. We think we are here applying that very rule of construction because we believe the grantor in the deed in question not only meant to say, but that he did say in effect that he was conveying the fee and reserving only the coal and mining privilege if you prefer that word, heretofore sold. But even this rule must yield to the higher one that the intention of the grantor must control. As we said in Franklin Fluorspar Co. v. Hosick, 239 Ky. 454, 39 S. W. 2d 665, 666, cited by appellees:

" 'The object in construing a deed is to ascertain the intention of the parties, and especially that of the grantor, from the words which have been employed in connection with the subject matter, and the surrounding circumstances.' * * *

"The construction must be reasonable and agreeable to common understanding, and the words employed in a deed should be given their fair and reasonable meaning, receiving the interpretation accorded them by the common usage of mankind, having in view the circumstances of their use and the context."

While we do not make it one of the bases of our decision, we think a brief consideration of some of the "surrounding circumstances" throws light on this case and tends to confirm the decision we have reached. It

is said in appellants' brief, and not denied in appellees' brief, that around the time of the conveyance of the 371 1/5 acres to his son and daughter, Ben J. Pike and Mary B. Clements, Sylvester Pike conveyed comparable tracts of land to each of his children. The brief listed the dates of these deeds from 1895 to 1905 and the size of the tracts from 150 acres to 281 acres to each child. Appellees' attorney evidently refers to the same division of land among the children when he says on page 29 of his brief: "Father Pike was then dividing his lands among his children." No proof has been taken in the case and therefore it is outside the record, but it is said in appellants' brief, and not denied in the brief of appellees, that in none of the conveyances which Sylvester Pike made to his various children did he make any mineral reservations except this reservation made in the deed to Ben Pike and Mary Clements. If this statement is true, why would Sylvester Pike reserve unto himself for use of his heirs, some of whom are the present appellees, the minerals, including oil and gas, under the tract which he conveyed to Ben Pike and Mary Clements and not make the same reservation in the deeds by which he conveyed tracts to his other children? The only reason he could possibly have would be the very one that having sold the coal under their tract, he had to reserve that coal which he had previously sold but did not mean to reserve any of the other minerals.

Another reason why we believe that Sylvester Pike did not intend to make any reservation as to gas and oil and other minerals, except coal, in his deed to Ben Pike and Mary Clements is very forcefully stated, perhaps inadvertently, in appellees' brief, when it was said on page 29 of that brief: "The chance of oil and gas being found under land in that area in 1903 was as remote as finding a pot of gold at the end of the rainbow."

We think this statement is true and we can take judicial knowledge of the fact that little attention was being paid to oil and gas rights back at that time when the automobile was just beginning to come on the scene and crude oil was used only for making kerosene with which to light the family lamps. Then, why did Sylvester Pike in 1903, when nobody dreamed of gas and oil in Union County, reserve unto himself the mineral rights to such products? Coal was then king and it is highly

probable that nobody had any thought at that time of anything but coal when he spoke of mineral rights. Therefore, it requires an obvious stretch of the imagination and makes for a strained construction to say that when in 1903 Sylvester Pike conveyed a tract of land to his son and daughter with this reservation, "and the coal and mineral privilege is hereby reserved having heretofore been sold," he meant by the words *mineral privilege* to reserve oil and gas rights when such things were almost unheard of at that time. Isn't it far more reasonable to say that he used these words as synonymous with *mining rights and privileges* which words he had used when he conveyed the coal to a mining company 29 days previous thereto?

### The Law of the Case

If any further support were needed to sustain the conclusion we have reached in this case, that support can be found in the comparatively recent case of Powell v. Owens, 290 Ky. 108, 160 S. W. 2d 383. The words contained in the reservation clauses in that case are more similar to the words under construction in the instant case than can usually be found in a supporting case. In that case there were two deeds involved; one of these excepted from the description *"the coal and minerals, mining rights and privileges which have heretofore been sold,"* the other deed, following the description used these words: *"excepting and reserving .from this conveyance the coal and minerals, mining rights and privileges heretofore sold and conveyed."* These are substantially the same words, arranged a little differently, as the words used in the. reservation clause here under consideration. It was contended there, as here, that by the inclusion of the word, *minerals,* in addition to the word, *coal,* which he had previously sold, the grantor meant to reserve to himself all minerals except the previously sold coal. In denying that contention, this court said: "It is next contended by appellants that disregarding the oral testimony, the deeds to Swinney and Owens are still susceptible to the construction that by reserving from the descriptions of the acreage conveyed, and excepting from the covenants of warranty the 'minerals,' 'mining rights', and 'privileges' in addition to the 'coal,' which latter he had previously sold, the grantor intended to reserve to himself all min-

erals except the previously sold coal. Emphasis is laid upon the use of the plural instead of the singular. But it will be observed from the provisions of the deeds heretofore quoted that the things reserved or excepted are grouped with and follow the word 'coal,' and that the entire enumeration is immediately followed by the descriptive phrase 'which have heretofore been sold' or 'heretofore conveyed' or 'heretofore sold and conveyed.' Obviously, the grantor had no other object in view than to make it clear that he was excepting from the deeds everything which he had previously disposed of so as to limit his warranty to those that were left. At least, we can place no other construction upon the language employed. Had we any doubt as to its meaning, we would be inclined to resolve it in favor of the grantees pursuant to the rule that in cases like this the instrument should be construed most strongly against the grantor and in favor of the grantee. McIntire v. Marian Coal Co., 190 Ky. 342, 227 S. W. 298.''

After careful consideration of the whole case, we think it is clear as the noonday sun that when Sylvester Pike gave the tract involved in this case to Ben J. Pike and Mary B. Clements in 1903, he conveyed to them the entire fee, including all minerals, except the coal and mining rights and privileges incident thereto which he had previously sold. If we had any doubt, we would resolve that doubt in favor of the grantees pursuant to the rule in such cases that where there is such doubt, it should be construed more strongly against the grantor and in favor of the grantees.

For the reasons herein indicated, the judgment of the lower court is reversed for further proceedings consistent with this opinion.

Judgment reversed.