## SELLARS et al. v. OHIO VALLEY TRUST CO., Inc. et al.

Court of Appeals of Kentucky.
Jan. 18, 1952.

As Modified on Denial of Rehearing
May 9, 1952.

ging mining and removing coal through underground passways and with the further privilege of carrying away through said underground passways all coal and all other minerals now owned or which may be acquired hereafter by the said L. P. Kleiderer his heirs and assigns. No surface rights or privileges are conveyed by this deed."

After describing the five tracts by metes and bounds and the exceptions, the deed states: "After deducting the total number of acres excepted from the total number of acres described in the five tracts of land referred to hereinabove there remains 328½ acres now owned and in possession of Elijah Sellars and this deed conveys the coal and mining privileges underneath the surface of the said 328½ acres."

The present suit relates to 154 acres of the tract.

About the same time, Kleiderer acquired 44 different deeds to 47 tracts, aggregating 3,354 acres, of minerals in Henderson County, of which the tract involved was a part, for development of the coal. In 1921 his trustee in bankruptcy conveyed all his mineral lands to the Ohio Valley Banking & Trust Company, which was the former name of the Ohio Valley Trust Company, appellee herein. The trustee's deed recites the conveyance of "all coal, mineral and oil rights." On April 17, 1926, the bank made a conveyance with the same description to James L. Lambert, and on the same day Lambert reconveyed it to his grantor, the appellee. The reason for this transaction is not disclosed. The express inclusion of oil in these instruments is immaterial. An oil and gas lease executed by the Trust Company is held by its co-appellee, the Gulf Refining Company, which has executed a partial assignment to the Basin Drilling Company.

Elijah Sellars' heirs, appellants, contend that his deed of December 11, 1905, does not convey the oil and gas.

In accordance with the generally accepted rule, the term "minerals" must be construed, not by any rigid or arbitrary definition, but by the context of the instrument in the light of the particular transac-

Hargadon, Bennett & Lemaire and Woodward, Hobson & Fulton, Louisville, A. Roy Copeland, Paducah, for appellants.

Pentecost & Dorsey and King & Craig, Henderson, for appellees.

COMBS, Justice.

The question is whether a mineral deed conveyed oil and gas. The circuit court construed it as doing so.

The granting clause of the deed, executed December 11, 1905, by Elijah Sellars to L. P. Kleiderer, is as follows: " * * * do hereby bargain sell and convey unto Grantee his heirs and assigns all the coal and other minerals underlying the surface of the five tracts of land situated in Henderson County Kentucky and hereinafter described together with the privilege of dig-

tion. Strictly speaking, oil and gas are not minerals, but hydrocarbon compounds. However, in a broad sense they may be and are termed minerals. So when the word "minerals" is used without qualifications, it is construed as covering all organic and inorganic substances that can be taken from the earth. Kentucky Diamond Min. & Developing Co. v. Kentucky Transvaal Diamond Co., 141 Ky. 97, 132 S.W. 397, Ann.Cas.1912C, 417; Hudson & Collins v. McGuire, 188 Ky. 712, 223 S.W. 1101, 17 A.L.R. 148; Scott v. Laws, 185 Ky. 440, 215 S.W. 81, 13 A.L.R. 369. Words of a grant of minerals, unambiguous in themselves, cannot be controlled by proof that the parties used them with a definite and limited meaning for the purpose of that particular instrument. This is the interpretation, although it may be apparent from the circumstances and the then known physical geography of the community that the parties to the instrument did not have some particular mineral in contemplation because they did not know or suppose there was such on the property at the time. Kentucky Diamond Min. & Developing Co. v. Kentucky Transvaal Diamond Co., supra; Maynard v. McHenry, 271 Ky. 642, 113 S.W.2d 13; Clements v. Morgan, 307 Ky. 496, 211 S.W.2d 164.

From this generalization, often stated, it was said in Federal Gas, Oil & Coal Co. v. Moore, 290 Ky. 284, 161 S.W.2d 46, 47: " 'The rule followed in this and practically all other jurisdictions is that a grant or exception of "minerals" in a deed includes all mineral substances which can be taken from the land unless restrictive language is used indicating that the parties contemplated something less general than all substances legally cognizable as minerals'. (Citations.) The word 'minerals' in a grant or exception includes oil and gas unless the language of the deed discloses an intention to exclude them. (Citations.) It is only where the language of a grant or exception is ambiguous that extrinsic evidence is admissible, and if there are no restrictive words, a conveyance or exception of minerals will include 'oil and gas' ".

■ The trial court heard evidence offered to aid in resolving the ambiguity which comes from the qualifications of the grant, i. e., the express exclusion of the surface rights or privileges, coupling of "other minerals" with "coal," prescribing "digging mining and removing of coal through underground passways," and the "further privilege of carrying away" through those passways coal and "other minerals." But the court found nothing in the evidence justifying the belief that the parties intended to exclude the oil and gas, and determined the meaning from the instrument itself.

In addition to proof of the acquisition of coal and mineral lands adjoining this tract as above related, appellants introduced evidence that the existence of oil and gas in the county was not known in 1905. It was established by appellees on the other hand that six leases for the exploration and production of oil and gas were recorded in Henderson County prior to or about the time the Sellars' deed was executed. They were executed in the years 1865, 1889, 1901, 1902, 1906 and 1907. If this evidence should have any influence, it may be said to "cut both ways." The existence of earlier leases raises the question of why oil and gas were omitted from this conveyance if it was believed they were present in the community. Other acts and omissions of the parties are of little value. Of such are the facts that Kleiderer, the grantee, entered upon the development of his lands for coal only, and that oil is included in the mesne conveyance of the minerals. All the other 43 conveyances acquired by Kleiderer were in the same, or substantially the same, language as the Sellars' deed. They excluded the right to sink a shaft in the mining processes and expressly excluded surface rights. However, the word "minerals" is not used in three of them. We agree with the trial judge's finding that the evidence fails to establish any intention to exclude the oil and gas.

■ If the granting clause of this deed of "coal and other minerals" stood alone, it would clearly embrace oil and gas. Scott v. Laws, 185 Ky. 440, 215 S.W. 81, 13 A.L.R. 369; Kentucky-West Virginia Gas Co. v. Preece, 260 Ky. 601, 86 S.W.2d 163; Federal Gas, Oil & Coal Co. v. Moore, 290 Ky. 284, 161 S.W.2d 46. And the fact that

the conveyance couples with the grant an easement which relates to the recovery only of coal and other solid minerals is not of itself sufficient disclosure of an intention to exclude the conveyance of oil and gas. Hudson & Collins v. McGuire, 188 Ky. 712, 223 S.W. 1101, 17 A.L.R. 148.

To the grant of "coal and other minerals," the deed adds, "together with the privilege of mining and removing coal through underground passways" and "mining privileges underneath the surface." It also grants the additional or "further privilege" of using the underground passways made by the extraction of coal from this land in the removal of "coal and all other minerals" from other land. These easements and rights have reference, of course, to the coal and hard minerals, but repetition of the phrase "coal and other minerals" negatives any sugestion that only the coal was intended to be conveyed. More troublesome is the restriction: "No surface rights or privileges are conveyed by this deed."

Under the construction thus far indicated, we have a grant of oil and gas unless the denial of the right to use the surface overcomes the presumption by proving that the oil and gas were intended to be excluded from the conveyance. We look more particularly to the situation resulting from the specific exclusion of all surface "rights or privileges" from the conveyance.

■ The instrument is a general warranty deed of conveyance of the minerals, the consideration being $2,463.73, or $7.50 an acre. The deed evidences the sale and conveys a mineral fee by direct grant of a severed and separate estate as distinguished from a mineral lease for production. These create different legal interests and different relations between the owner of the surface and the grantee. In a lease there is something affirmative for the lessee to do, that is, to attempt to discover and develop the oil and gas within a reasonable time, while by a deed title vests and it is immaterial whether development ever takes place. Summers, Oil and Gas, Section 132.

■ We are not unmindful of the fact that title to oil and gas in place, whether a severed or unsevered estate, is a qualified one. Because of their fugitive characteristics, the landowner does not own the oil and gas in the sense that he owns the surface or the solid minerals. His ownership is limited to the exclusive legal right to explore and, if oil or gas should be found, to reduce the same to possession and ownership. Until that is done, the oil and gas might escape and be captured by another from wells on other premises. But he has the right to exclude all others from attempting to exercise the right on his premises. Hail v. Reed, 15 B.Mon. 479, 54 Ky. 479, decided in 1854; Scott v. Laws, 185 Ky. 440, 215 S.W. 81, 13 A.L.R. 369; Hammonds v. Central Kentucky Natural Gas Co., 255 Ky. 685, 75 S.W.2d 204; Swiss Oil Corp. v. Hupp, 253 Ky. 552, 69 S.W.2d 1037, 1043; United Fuel Gas Co. v. Swiss Oil Corp., 6 Cir., 41 F.2d 4. And as said in Gray-Mellon Oil Co. v. Fairchild, 219 Ky. 143, 292 S.W. 743, 745, regarding a deed of conveyance of minerals: "While the oil is fugitive, the sand-bearing oil is as stationary as a bank of coal," and "The only practical use to which the oil-bearing sand can be put is to get the oil out of it." This is the effect also of Duncan v. Mason, 239 Ky. 570, 39 S.W.2d 1007; Kentucky Natural Gas Corp. v. Carter, 303 Ky. 559, 198 S.W. 2d 311; Sammons v. Warfield Natural Gas Co., 304 Ky. 548, 201 S.W.2d 719, holding the grantees were vested with the entire ownership of the minerals.

■ Counsel for both parties have cited cases from other jurisdictions, but we have found these authorities of little assistance in the determination of the question involved. The question presented here must be resolved from a consideration of the language of the deed when viewed in the light of the conditions which existed at the time of its execution.

It is suggested by appellees that it was contemplated that when Kleiderer had determined what surface land he desired for his operations he would make separate and additional contracts for the acquisition of the use of such surface rights, and that the exclusion of surface rights does not in any degree qualify the conveyed title or owner-

ship of the minerals. As a matter of fact, it appears that the appellees have made such collateral contracts with others and unsuccessfully endeavored to do so with the appellants.

Appellees emphasize the fact that Kleiderer acquired no surface rights by any of the 44 different deeds taken by him, and argue that even though he was interested primarily in development of the coal, it must have been obvious at the time of execution of the deeds that it would be necessary to have some surface rights for tipples, slate dumps, air shafts, etc., in the development of such a large acreage. It is argued that since there was an omission of needed surface rights for operation of the coal, which admittedly was conveyed, the exclusion of the surface rights for production of the oil and gas is not evidence of an intention to exclude those substances.

It is not improbable that from Kleiderer's point of view, even with the exclusion of surface rights in the conveyance, the right in him to prevent a competitor from drilling on this tract was considered a valuable privilege. Certainly it placed him in a stronger position in bargaining for surface rights for himself. It is common knowledge in the oil and gas industry that, because of their fugitive nature, at least some of the oil and gas on any particular tract can be obtained through wells drilled on adjoining tracts.

In summary, we are unable to say, from a consideration of the language of the instrument, that the parties intended to exclude the oil and gas. We conclude, therefore, that the oil and gas were conveyed, and that Sellars' heirs have no right, title or interest in the minerals, including the oil and gas, if any, or the right to explore and recover the same. Their relationship to the grantee and his successors is that of a trustee holding possession of the minerals for the benefit of the owner. KRS 381.430, Foxwell v. Justice, 191 Ky. 749, 231 S.W. 509; Smith v. Graf, 259 Ky. 456, 82 S.W.2d 461.

The question whether appellees have the right to necessary surface privileges for re-

covery of the oil and gas, notwithstanding the language of the deed, is not an issue in this case and we express no opinion on that question.

The judgment is affirmed.

LATIMER, J., dissenting.