## ARNETT v. SINCLAIR PRAIRIE OIL CO. et al.

### No. 359.

United States District Court
W. D. Kentucky.

Oct. 8, 1948.

Thomas E. Sandidge, W. P. Sandidge, Owensboro, Kentucky, for plaintiff.

N. Powell Taylor, Pentecost & Dorsey, King & Flournoy, Henderson, Kentucky, for defendants.

SWINFORD, District Judge.

The record is before me on the defendants' motions to dismiss the complaint and on motions for summary judgment by both the plaintiff and defendants.

The sole question presented is the propriety of the plaintiff's claim to mineral

rights, other than coal and fire clay, in a 47 acre tract of land in Henderson County, Kentucky. On January 7, 1915, the plaintiff became the owner in fee simple of the tract in question. On the following day he and his wife executed a mortgage on this and another small tract of land to T. J. Arnett.

The mortgage contained this provision: "It being understood and agreed that the coal and mining rights under this land is not mortgaged or affected hereby but are reserved together with the free and uninterrupted right of way, underneath the surface, into said land at such points and in such manner as may be proper and necessary for the purpose of digging, mining, draining, ventilating, coking and carrying away said coal, hereby waiving all surface damages arising from the removal of said coal, and together with the privileges of carrying through said described premises, underneath the surface, supplies, tools or other coal or minerals, underlying adjacent properties now belonging to or which may hereafter be acquired by Mortgagor his heirs or assigns."

The following year suit was instituted in the Henderson Circuit Court to foreclose this mortgage. Judgment was duly entered and the Master Commissioner was directed to sell the property to satisfy the indebtedness. This judgment and order of sale contained this provision: "the coal and other mining rights in and under said 47 acres have heretofore been conveyed and are not to be sold under this decree."

The sale was had and the mortgagee, T. J. Arnett, through whom the defendants claim title to the oil and gas, became the purchaser. In the commissioner's deed to T. J. Arnett there is this provision: "The coal and other mining rights in and under the 47 acres have heretofore been conveyed."

The purchaser at the foreclosure sale, T. J. Arnett, received his commissioner's deed on January 12, 1918. On March 2, 1918, he sold the property to one Walter H. Lockett and his wife. The deed from Arnett to the Locketts contained this provision: "The coal and mineral rights underlying this property is not herein conveyed."

In 1933 the Locketts conveyed the tract to W. W. Brackett and his wife. The deed contained this provision: "Less however the coal and mineral rights underlying this property is not herein conveyed having been retained in a former deed from T. J. Arnett and wife Virginia Arnett to the first party."

From this undisputed record the court is asked to determine the ownership of the oil and gas minerals under this 47 acre tract. Was T. E. Arnett ever divested of the ownership of these minerals?

The case has been ably, exhaustively and extensively briefed. Many, if not all, of the Kentucky cases and Federal cases from Kentucky having any remote bearing on the question have been cited. Notwithstanding the admirable diligence and industry of counsel in research numerous cases are of little value. The rule in Kentucky is clear and its application to the case at bar not especially difficult.

The arguments have been addressed largely to what was the intention of the parties in the statement contained in the mortgage from T. E. Arnett to T. J. Arnett. This at best can be only speculative. Possibly even the parties to the transaction could not today tell. truthfully what they had in mind. The reservation may have been on suggestion of the attorney or draftsman who wrote the mortgage without ever having been seen or understood by the parties. Surrounding facts and circumstances at that time which have since been forgotten may have suggested that the language found in the mortgage be used. Maybe it was because the coal and fire clay had been sold or maybe it was not. At any rate if that was the reason the words "fire clay" could just as easily have been used. The point I make is that no one knows what was the intention and I think that is the mistake courts frequently make in attempting to make the law fit what they feel is particularly worthy in a case. Thus the law of real property, which should be fixed and definite, is obscure and

indefinite. Hard cases have sometimes made bad law.

The Kentucky cases on a construction of the terms "minerals", "mineral rights", "mining rights", etc., are somewhat confusing. There seems to be no hard and fast rule which might be applied to all cases. The rule is conceded to be that such terms apply to all minerals, but there have been so many exceptions or modifications made to its application in given cases that the law on the subject is in a fluid rather than a concrete state. Such should not be.

The whole concept of the law on succession of title to real property is that recorded instruments of title inform a purchaser what he is buying. He is on notice of any reservation or exceptions, affecting the title. Any reference to minerals or mining rights puts him on inquiry before he parts with the purchase price. Then why should there be any doubt in the law of real property where there is such an express reference? The purchaser here saw this reservation but in the face of it he made his purchase and now relies on the court to say that while mining rights, mineral rights and such phrases when used in deeds and real estate conveyances in Kentucky mean all minerals, in this particular instance because of circumstances the parties only intended to reserve coal.

I am unwilling to add to the confusion. As I read the cases such terms mean all minerals and the purchaser took title knowing from the face of the commissioner's deed that the coal and other mining rights had heretofore been conveyed.

If there was any question to clarify the time to clarify it was between the purchase at the commissioner's sale and a confirmation of that sale. The deed was presented and approved in open court. The purchasers Lockett and his wife within a few weeks again conveyed the property and in their deed of conveyance reserved "the coal and mineral rights".

There is, however, one thing not left to speculation, surmise and inference and that is the mortgage was telling all subsequent purchasers of any title in the 47 acre tract that coal and mining rights were not included in the mortgage. The next duty of a purchaser was to see what was meant by "mining rights" in the State of Kentucky. There shouldn't be any speculation as to this. In plain English mining rights means what it says and that is the right to mine minerals and minerals means oil and gas. Rowe v. Chesapeake Mineral Co., 6 Cir., 156 F.2d 752, 755.

I quote the following paragraph from the Rowe case which sets forth the Kentucky authorities on which it rested its decision: "Since this case involves title to Kentucky land, the state law controls, and Kentucky follows the established rule. The phrase 'all coal and mineral lying upon and under our farm' contained in the granting, habendum and warranty clauses of the Reynolds deed, under Kentucky law means coal, oil and gas, as well as other minerals. Maynard v. McHenry, 271 Ky. 642, 113 S.W.2d 13; Kentucky West Virginia Gas Co. v. Preece, 260 Ky. 601, 86 S.W.2d 163; Federal Gas, Oil & Coal Co. v. Moore, 290 Ky. 284, 161 S.W. 2d 46; Hurley v. West Kentucky Coal Co., 294 Ky. 96, 171 S.W.2d 15; Hudson & Collins v. McGuire, supra [188 Ky. 712, 223 S.W. 1101, 17 A.L.R. 148]; Slone v. Kentucky-West Virginia Gas Co., 289 Ky. 623, 159 S.W.2d 993. As declared in Maynard v. McHenry, supra, 271 Ky. at page 646, 113 S.W.2d 14, the rule followed in Kentucky and practically all other jurisdictions 'is that a grant or exception of "minerals" in a deed includes all mineral substances which can be taken from the land unless restrictive language is used indicating that the parties contemplated something less general than all substances legally cognizable as minerals.' Appellants contend that the deed contains restrictive language because the easements specifically created are 'to mine said coal * * * with all the usual mining privileges. * *' But the Kentucky courts do not construe phrases of this kind as constituting restrictive words amounting to a reservation. The grantees are in no way limited to the removal of coal. There simply is an absence of language specifically covering the

exploration for, securing and refining of oil. As stated in Federal Gas, Oil & Coal Co. v. Moore, supra, the terms of the mining privileges do not limit the operations to the removal of hard minerals. While in Kentucky-West Virginia Gas Co. v. Preece, supra, the easements included the right to explore, exhaust, store, handle, manufacture and refine the minerals conveyed, and therefore an express recognition was given to the inclusion of oil in the general term 'minerals,' in Hurley v. West Kentucky Coal Co., supra, the easements conveyed were the usual easements for the removal of coal; but it was held that gas and oil were included."

None of the defendants here can claim to have been mislead by this mortgage into thinking that only coal was reserved. A cursory examination of the court records would have disclosed that the subsequent judgment and three succeeding deeds sought only to convey the surface of the land.

Much of the argument is addressed to the interpretation of the language contained in the mortgage. I don't think that especially important. The significant fact in this case is the contents of the judgment in the foreclosure suit. Regardless of what T. E. Arnett did or did not intend to convey the judgment clearly stated that coal and other mining rights were not to be sold by the commissioner. The commissioner's deed conformed to the language of the judgment. This was undoubtedly accepted by the purchaser T. J. Arnett as including all minerals as he used that phrase in his deed to the Locketts only a few weeks later. There could be no greater title pass to T. J. Arnett at the commissioner's sale than the commissioner was directed to sell. Whatever title remained unsold remained vested in the mortgagor.

This judgment using the term "other mining rights" admits of but one reasonable construction. Any one seeking to purchase the property could not ignore the fact that this must mean something more than coal or why would the term *other* be used. If it had only meant coal

with only the privilege of mining the coal the word "other" would certainly not have been used.

Much comment is had in briefs on the recent case of Clements v. Morgan, 307 Ky. 496, 211 S.W.2d 164, 166. A close reading and analysis of the opinion leads me to believe that it is of little benefit as authority for either plaintiff or defendants here. While it is stressed by plaintiff as authority for the interchangeable use of the terms "mining rights" and "mineral privilege", and urged equally as strongly by the defendants as authority for their position that the language "all the coal and mining rights and privileges", being used in the deed there in question conveyed only the coal, I believe the language referred to by both sides may be considered as more dictum than decision and that the Kentucky court was guided to a great degree if not all together by the recitation that the deed meant to reserve only coal and mineral privilege are reserved *"having heretofore been sold"*. I think the words *underscored* are what prompted the decision. I quote this language from the opinion: "It is, of course, fundamental law that in construing a deed the cardinal rule of construction is to arrive at the intention of the grantor, just as in the construction of wills, we seek to arrive at the intention of the testator. Now what was the manifest intention of the grantor in this case? Clearly it was to convey to his son and daughter the fee simple title to the tract of land described in the deed to them. But knowing that less than 30 days before he had conveyed the coal under this land to a corporation and could not again convey the coal and mining rights and privileges, he, of course, excluded them by using what, in effect and to all intents and purposes, is the same language he had used in conveying the coal rights, calling it in this latest conveyance, 'coal and mineral privileges' instead of 'coal and mining rights and privileges,' as he had said in the previous deed. Can there be any difference here except the difference between tweedledee and tweedledum? We think not. But if by metaphysical reasoning a distinction between these two phrases

could be drawn, we think the grantor of the deed put the 'clincher motion' when he added that this coal and mineral privilege is hereby reserved, 'having heretofore been sold.' "

I must therefore conclude that the plaintiff retained title to the oil, gas and all minerals other than coal and fire clay under the 47 acre tract of land.

Some of the defendants plead and rely on the doctrine of estoppel. The answer of the defendant George A. Hoffman pleads the facts on which the claim of estoppel is based. This answer is adopted by other of the defendants. I do not think the defense as plead states facts sufficient in law to constitute a defense. An owner of mineral rights does not have to continually assert his title and one going upon the surface for the purpose of extracting the minerals does so at his risk.

I can find nothing in the pleading which would establish a right to claim title by equitable estoppel. The plaintiff did nothing to mislead or defraud the defendants. He was not even in the State of Kentucky. It should be borne in mind that this plea of estoppel is asserted to establish title adversely to the plaintiff. When estoppel is urged as a lawful claim to real estate it must be most positively factual in the reason for the claim. The plea here sets forth no fact sufficient in law to justify admitting proof.

In 19 Am.Jur. Section 87, page 743, we find this pertinent text: "In order to establish an equitable estoppel against one asserting his title to real property, the party attempting to raise it must show an actual fraudulent representation, concealment, or such negligence as will amount to a fraud in law and that the party setting up such estoppel was actually mislead, thereby to his injury. It must be pointed out, moreover, that in all instances a clear strong case of estoppel must be made out where a clear legal title to land requiring written conveyance to pass it, is to be divested out of its owners and vested in others as if a conveyance had been made."

See also Rowe v. Chesapeake Mineral Co., D.C.Ky., 61 F.Supp. 773.

There is also a plea of acquisition of title by adverse possession. There was a severance of the minerals from the surface in 1915. In order to make adverse claim to the minerals some overt act of possession must be committed. There must be an open, notorious claim to the minerals as against the owner. Flynn et al. v. Fike et al., 291 Ky. 316, 164 S.W.2d 470; Vorhes et al. v. Dennison et al., 300 Ky. 427, 189 S.W.2d 269.

No limitation could run against the owner of the minerals in favor of the owner or occupant of the surface or those claiming under him. Franklin Flourspar Co. v. Hosick, 239 Ky. 454, 39 S.W.2d 665.

The same question was before the author of this memorandum in Saulsberry v. Maddix in the Eastern District of Kentucky. The judgment of the lower court was appealed and in the opinion of the Court of Appeals for the Sixth Circuit, 125 F.2d 430, 433, the question is treated as follows: "The rule prevails in Kentucky that prior to a severance, mineral lands form no exception to the general rule that the title of the owner of real property includes not only the surface thereof, but also that which lies beneath and above it; therefore, an adverse possession to the surface of mineral lands before severance may ripen into title to the minerals as well as the surface. J. B. Gathright Land Co. v. Begley, 200 Ky. 808, 255 S.W. 837. However, where there is a conveyance of a fractional undivided interest in the minerals, or a conveyance of lands excepting a fractional interest in them, a severance of the mineral estate from the surface estate is affected and where such severance has occurred, the possession of the surface does not carry with it the possession of the minerals under the surface. Severance creates separate estates, which are held by separate and distinct titles, each being incapable of possession by the mere occupancy of the other. This is true even if the instrument constituting color of title purports to convey the entire property. Prewitt v. Bull, 234 Ky. 18, 27 S.W.2d 399; Franklin Flourspar Co. v. Hosick, 239 Ky. 454, 39 S.W. 2d 665; Scott v. Laws, 185 Ky. 440, 215

349

S.W.2d 81, 13 A.L.R. 369; Farnsworth v. Barret, 146 Ky. 556 [142 S.W. 1049]."

Notwithstanding the many different shades of decision in Kentucky on the meaning of the terms mineral and mining rights and privileges, I must conclude that the judgment of the Henderson Circuit Court left the title to these minerals in the owner and plaintiff here, T. E. Arnett. I do not believe this case rests on determining from this record what was the intention of the parties at the time of the execution of the mortgage. That fact can at best, as I have heretofore said, be but an inference. There can be no doubt of the judgment of the court limiting the sale to surface only as the recitation "coal and *other* mining rights" was notice to all subsequent purchasers that something *other* than coal was reserved.

The plaintiff is entitled to the quiet possession of the minerals. There should be an accounting made to him of all moneys derived from the sale of minerals to which he would have been entitled had he been left to the proper enjoyment of his estate.

Orders in conformity with this Memorandum should be submitted.